# THE CARROLL SPRINGS DISTILLING COMPANY *vs.* CHARLES H. SCHNEPFE.

*Action for Nuisance—Evidence as to Diminution in Value of Plaintiff's Land—Estoppel by Silence—Avoidance of Injury by Reasonable Care—Nuisance from Slop Tank and Smoke of Distillery— Measure of Damages.*

In an action to recover damages for a temporary and abatable nuisance created on defendant's land adjoining that of plaintiff, evidence as to the difference between the value of plaintiff's land before the creation of the nuisance and its value afterwards is not admissible.

But the error of the trial Court allowing such evidence to be given is not prejudicial to the defendant, when the jury is afterwards instructed that the plaintiff is not entitled to recover damages for any permanent diminution in the value of his property.

After operating a small distillery, the defendant bought additional land and enlarged the works. In an action by an adjoining owner for a nuisance thereafter created, the defendant alleged that the plaintiff had not complained of the operation of the distillery and that the defendant would not have bought the additional land if he had known of complaints. *Held*, that under these circumstances plaintiff's silence does not estop him from maintaining the action.

Plaintiff's declaration in an action for a nuisance alleged that the defendant, a distillery company, erected a large slop tank which daily overflowed and formed a stagnant pool on plaintiff's land. Defendant offered a prayer instructing the jury that the plaintiff is not entitled to any damages which he might have avoided by the exercise of ordinary care. *Held,* that this prayer was properly rejected, first, because it was calculated to mislead the jury into supposing that there could be no recovery in respect to the wrong alleged, if the plaintiff by the exercise of ordinary care, could have avoided all damage, and second, because it fails to define the duty imposed by law on the plaintiff and the consequences to him which would result from the breach of that duty.

A party is bound to use reasonable exertion to avoid damage from another's wrongful act, but his failure to do so does not bar his right of action for the wrong, although he may not recover for those damages suffered in consequence of his failure to exercise such care.

In an action for a nuisance, plaintiff's evidence showed that the defendant, a distillery company, dug a slop tank near the adjoining land of the plaintiff, and also erected two smoke stacks, which were about thirty-four feet from plaintiff's property, that the water which accumulated in the tank flowed upon the premises of the plaintiff, and also through the earth into the cellar of plaintiff's dwelling house in such a way as to interfere seriously with his comfortable enjoyment; that

foul odors and gases from the slop tank polluted the air, and that smoke and cinders settled on plaintiff's land and entered his house in such quantities as to cause great discomfort to plaintiff and his family. *Held,* that this evidence, if found to be true by the jury, is sufficient to entitle the plaintiff to recover damages.

In such action, a prayer is erroneous which instructs the jury that they should award plaintiff such sums as will compensate him for the injury arising from such inconvenience and discomfort, the extent of which the jury may measure in damages in view of all the facts and circumstances of the injury. This prayer not only ignores the duty of plaintiff to have minimized the damages resulting from the overflow of the tank, but it also fails to confine the recovery to such damages as the plaintiff may have suffered up to the time of bringing this suit.

*Decided November 19th, 1909.*

Appeal from the Superior Court of Baltimore City (STOCKBRIDGE, J.), where there was a judgment on verdict for the plaintiff for $500.

*Plaintiff's 1st Prayer.*—If the jury find that the defendant caused to be dug in close proximity to the premises of the plaintiff an excavation as detailed in the evidence, and that the defendant so graded its lot of ground that the water which fell upon the same ran into and was accumulated in said excavation, and that the said water so accumulated ran through the intervening earth and into the cellar of plaintiff's dwelling in such a way as to seriously interfere with the ordinary comfort and enjoyment of it, then the jury should find a verdict for the plaintiff. (*Granted as modified.*)

*Plaintiff's 2nd Prayer.*—If the jury find from the evidence that the defendant caused or allowed slop to flow from his premises over and upon the property of the plaintiff, in such a way as to seriously interfere with the ordinary comfort,

then the jury should find a verdict for the plaintiff. (*Granted as modified.*)

*Plaintiff's 3rd Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that the defendant caused to be erected upon its premises immediately adjoining the premises of the plaintiff or elsewhere a slop tank or tanks, and if the jury further find that the said slop tank or tanks emits foul and noxious vapors, which spread and diffuse themselves over and upon the plaintiff's premises, and if the jury further find that said gas or vapor passes over the plaintiff's premises in such quantities as to contaminate and pollute the air, thereby causing great bodily discomfort, then the jury should find for the plaintiff. (*Granted as modified.*)

*Plaintiff's 4th Prayer.*—If the jury find from the evidence that the plaintiff is possessed of the premises referred to in the evidence, and if they shall further believe that the defendant is in possession of the adjoining premises, and works and operates a distillery thereon for the purpose of distilling whiskey, and that in the operation of the said distillery the defendant uses a steam boiler; and if the jury shall further find that by operating the same by himself, his agent and employees large quantities of steam, offensive smoke, dust, soot and cinders were caused thereby to be emitted from his said factory and premises, which settled upon the plaintiff's premises, entered his house, causing injury and damage to the same; and if they find that said smoke, steam, cinders and vapors are of such a character and in such quantities as to cause great bodily discomfort to the plaintiff, his family, and in consequence thereof he has suffered injury, if the jury so find, then the plaintiff is entitled to recover. (*Granted as modified.*)

*Plaintiff's 6th Prayer.*—If the jury find from the evidence and under the instructions of the Court that the plaintiff is entitled to recover in this action, and if the jury further find that the defendant acted maliciously, wantonly or in reckless

disregard of the rights of the plaintiff, then the jury are at liberty to give exemplary damages. (*Refused.*)

*Plaintiff's 8th Prayer.*—That every man is entitled to the comfortable enjoyment of his own home, and if the jury shall find from the evidence and under the instructions of the Court that the plaintiff is entitled to recover in this action, and that the plaintiff's home was rendered greatly uncomfortable and inconvenient by the misconduct of the defendant, then they should award the plaintiff such sums as will compensate him for the injury. While there is no arithmetical rule for estimating the damages, yet the causing of such inconvenience and discomfort to the plaintiff would be an injury in the eye of the law, the extent of which the jury may measure in damages in view of all the facts and circumstances of the injury. (*Granted.*)

*Defendant's 1st Prayer.*—The Court instructs the jury that the operation of a distillery is not in itself a nuisance for which the owner is liable to an adjoining property owner, and if the jury shall find that the slop tank mentioned in this case was connected with the opening in the sewer on plaintiff's lot with plaintiff's consent; and if the jury shall further find that when objection to said slop tank being so connected was made known to said defendant said slop tank was promptly disconnected with said opening, and if the jury shall further find that while said tank was so connected with said opening said connection was used in accordance with said plaintiff's consent; and if the jury shall further find that after said slop tank was disconnected no further slop flowed into said opening or on to the lot of said plaintiff; and if the jury shall further find that when objection to the scales mentioned in the evidence was made known to the defendant said scales were drained as mentioned in the evidence; and if the jury shall further find that the plaintiff's dwelling was not injured by water alleged to flow from said scales; and if the jury shall further find that neither said water so alleged to flow from said scales nor any smoke arising solely from defendant's smokestacks materially inter-

fered with the defendant in the reasonable enjoyment of his property, having in view the locality of defendant's property and the particular circumstances of this case, then their verdict shall be for the defendant. (*Granted.*)

*Defendant's 2nd Prayer.*—That there is no evidence in this case of any permanent injury to the plaintiff or plaintiff's property because of any alleged injury by the defendant, and therefore the plaintiff is not entitled to recover any damages for any alleged permanent injury. (*Granted.*)

*Defendant's 3rd Prayer.*—In determining the question whether the plaintiff has suffered actual and substantial and material injuries, the jury may consider the locality of the plaintiff's property,. and that of the defendant, the nature of the business that is being conducted by the defendant, the manner of using the property producing the alleged injuries; and the jury may also consider the kinds of business, if any, which are being conducted and carried on in the vicinity of these properties. If the jury find from the evidence that the plaintiff's property is situated in a populous city and in the vicinity of a steam railroad, of a factory, of a slaughter house, then the jury may consider these facts in determining whether the plaintiff has suffered injuries of the kind named. A party dwelling in a populous city and in such a vicinity cannot have the same freedom from annoyances that he would have in the country, or any other district. If these annoyances, should the jury so find them to be such, are either trifling in their nature, or are such as under the particular circumstances of this case do not cause real, substantial and material injuries, then, so finding, the plaintiff cannot recover. (*Granted.*)

*Defendant's 4th Prayer.*—That in actions of this kind the law does not regard trifling inconveniences; that everything must be looked at from a reasonable point of view; that in determining the question of nuisances in such cases the locality and all the surrounding circumstances should be taken into consideration; and that where expensive works have been erected and carried which are useful and needful to

the public, persons must not insist on extreme rights and bring actions in respect to every trifling annoyance; otherwise, business could not be carried on in such places. (*Granted.*)

*Defendant's 5th Prayer.*—The burden of proof is on the plaintiff to prove his case in all its particulars, by preponderance of evidence, and if the testimony on behalf of the plaintiff, and of the defendant, taken together, leaves the minds of the jury in doubt, then their verdict must be for the defendant.   (*Granted.*)

*Defendant's 6th Prayer.*—The plaintiff is not entitled to any damages which he might have avoided by the exercise of ordinary care on his part.   (*Refused.*)

*Defendant's 7th Prayer.*—That there is no evidence in this case that the defendant acted maliciously, as claimed in the plaintiff's declaration; and the Court further instructs the jury that there is no evidence in this case that the defendant company, its agents and servants in the premises, broke into and entered the plaintiff's close, situated in the City of Baltimore, and the State of Maryland, and known as 811½ and 813 Frederick avenue, where the same lies adjacent to the land of the said defendant and others, and with force of arms erected partly upon the land of the plaintiff a large slop tank, as claimed in the second count of the plaintiff's declaration.   (*Granted.*)

*Defendant's 8th Prayer.*—That there has been no evidence introduced legally sufficient to prove that there was any permanent diminution in the value of the plaintiff's lot and houses next adjoining defendant's distillery by the operation of the distillery, or that the plaintiff suffered any loss or damage from the alleged diminution in value of his lot and house between the time when the defendant began the operation of the distillery and the time of bringing this suit; and therefore the plaintiff is not entitled to recover any damages for diminution in the market value of said lot and houses.   (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER and BURKE, JJ.

*William P. Lyons,* for the appellant.

*August W. Schnepfe,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This is the defendant's appeal from a judgment rendered against it in the Superior Court of Baltimore City. The suit was one in *tort,* and the declaration contained five counts, each of which set out a distinct cause of action. The first count alleged that the defendant wrongfully caused to issue and proceed from a certain distillery carried on by it large quantities of offensive, poisonous and unwholesome smoke and other vapors and noxious matter which spread and diffused themselves over and upon certain land of the plaintiff, and which settled upon and were deposited upon the soil and surface of said land, whereby the trees, hedges, crops, lands and dwelling of the plaintiff were damaged and deteriorated in value; the second count alleged that the defendant, its agents and servants broke and entered the plaintiff's close and erected partly upon the land of the plaintiff. a large slop tank; the third count charged that the defendant wrongfully caused to issue from the slop tank aforesaid large quantities of offensive, poisonous and unwholesome odors, which spread and diffused themselves over and upon the lands of the plaintiff, corrupted the air and which settled upon the soil and surface of said land; the fourth count alleged that the said slop tank daily overflowed over and upon the premises of the plaintiff, and formed a stagnant pool injuring the trees, hedges and lands and dwellings of the plaintiff; the fifth count charged that the defendant company dug directly adjoining the dwelling house of the plaintiff a large pit, and so graded and paved its lot of ground as to cause all the water that fell upon its lot to run into and accumulate in the pit; and that it failed to drain the pit, and in consequence thereof

the accumulation of water in the pit passed through and into the cellar of the plaintiff's dwelling and thereby caused it to become damp and unfit for habitation. Each count, except the second, concluded with the averment that by reason of the wrong therein stated the plaintiff was prevented from having so healthy and beneficial use and occupation of his dwelling and lands as he otherwise would have had.

The case proceeded to trial upon the issue joined upon the defendant's plea of not guilty. At the close of the whole case at the instance of the defendant, the Court instructed the jury that there could be no recovery under the second count; nor could there be any recovery for permanent injury or permanent diminution in the value of the plaintiff's lot and houses; nor could there be a recovery of punitive damages, as there was no evidence upon which such damages could be allowed. The case being one of a temporary, or abatable private nuisance, is to be governed by the well-settled rules applicable to an action of that character.

It is unnecessary, in order to dispose of the legal questions presented, to discuss the evidence at much length. A statement of its general purport and effect will be sufficient.

The plaintiff is the owner of a lot situated on Frederick avenue in Baltimore City. This lot is improved by two dwelling houses in one of which the plaintiff resided with his family during the continuance of the alleged nuisance, and in the other, at the time of the trial, the plaintiff's wife conducted a dry goods business. The defendant's property adjoined the plaintiff's on the west, and fronts one hundred feet on Frederick avenue with an even depth of two hundred and seventy feet. Upon this property it has a plant for the distillation of spirits and the manufacture of yeast. A smaller plant for the conduct of a like business was operated upon the premises by a Mr. Weitheger prior to 1906 in which year the defendant bought the business and somewhat enlarged the plant, and in 1907 it purchased additional land to be used in connection with its business.

The distillery of Mr. Weitheger was a small affair, consuming about a ton of coal a day. He had a small slop tank located about in the same place as the one complained of in the declaration, but this tank caused no injury to the plaintiff's property. After the defendant acquired the property, it built a new and a larger slop tank. In the rear of the defendant's lot, about 34 feet from the plaintiff's property, are erected two smoke stacks seventy-five feet high, and placed on the top of a building fifteen feet in height. There was no evidence offered of any injury to trees, hedges, herbage and crops as alleged in the declaration, nor was there any evidence of loss of sales or rent; but there was evidence tending to support all the other allegations of injury, except that stated in the second count. This, however, was controverted by much evidence produced on behalf of the defendant. It was the exclusive province of the jury to determine these disputed questions of fact, and, whether its decision was right or wrong, this Court has no power to review it.

During the progress of the trial eight exceptions were reserved by the defendant. Seven of these related to the admission of evidence, and one to the ruling on the prayers. The Court, over the objection of the defendant, permitted the plaintiff to offer evidence as to the value of the property before and after the injury complained of. As the nuisance was a mere temporary one, this ruling which is the matter complained of in the first, second, third, fourth and fifth exceptions, was erroneous; but inasmuch as the Court subsequently instructed the jury that there could be no recovery for permanent injury or permanent diminution in the value of the plaintiff's property it was not prejudicial error. The Court will not reverse a judgment unless there be a concurrence of error and injury.

The defendant's sixth and seventh exceptions present the same question. It offered evidence tending to prove that it would not have bought other or additional property, which it did buy, to be used in connection with the business if it had heard any complaint, or had known that anybody would

object to the distillery. It is contended that upon the facts of the case the plaintiff is equitably estopped to prosecute this suit. This contention rests upon the *mere silence* of the plaintiff, as alleged by the defendant, in respect of the wrong sued for. It is not pretended that the plaintiff knew that the defendant was about to buy additional property, or that he knew that it had in fact bought such property, or that he said, or did anything to induce the defendant to purchase property. The defendant was chargeable with the knowledge that no one has a right to erect or operate works which are a nuisance to a neighboring owner, and then say he has expended large sums of money in the erection and establishment of its plant. It must be held to have known that the neighboring owner is entitled to the reasonable and comfortable enjoyment of his property, and that, if his rights in this respect are invaded, he is entitled to the protection of law, let the consequences be what they may. *Susquehanna Fertilizer Company* v. *Malone,* 73 Md. 282.

The offer was not to prove that the plaintiff induced or encouraged the purchase with the knowledge of the manner in which the plant was to be operated, or that the defendant did in fact consider or rely upon his silence, but *merely* that it would not have bought if it had heard or known of complaints from anybody. If it did in fact create a nuisance, it is chargeable with knowledge that any person injured would have a right to complain. Under such circumstances, the doctrine of estoppel *in pais,* which is applied in a great variety of circumstances, cannot be invoked.

"The doctrine of equitable estoppel stands upon the broad ground of public policy and good faith; it is interposed to prevent injustice and to guard against fraud, by denying to a party the right to repudiate his admissions, when those admissions have been acted upon by persons to whom they were directed and whose conduct they were intended to influence." *Alexander* v. *Walter et al.,* 8 Gill, 254; *Nicholson* v. *Snyder,* 97 Md. 427; *Hardy* v. *The Bank, etc.,* 51 Md. 590.

Estoppel by silence can only arise where the silence would amount to a fraud, actual or constructive. 11 *Am. & Eng. Ency. of Law,* 427; *Carmine* v. *Bowen,* 104 Md. 204.

It is stated in 29 *Cyc.* 1231, that "one who has slept upon his rights for a considerable time by acquiescing in the alleged nuisance will be denied equitable relief, and will be left to his remedy at law; but the fact that a person knows that a structure is being built and the purpose for which it is to be operated and makes no objection thereto, does not afterward estop him to sue to abate it as a nuisance because of injuries arising from its use, unless he encouraged or influenced the person complained of to build the structure and establish his business in the neighborhood."

This brings us to the consideration of the prayers. The defendant submitted eight prayers for instruction to the jury, all of which were granted except the sixth, which was in these words: "The plaintiff is not entitled to any damages which he might have avoided by the exercise of ordinary care on his part."

This prayer was intended to raise the question of the defendant's duty to minimize the damage which the fourth count alleged to have been caused by the overflow from the slop tank. There was evidence in the case upon which a proper instruction upon this point might have been based; but the prayer as offered was defective for two reasons, either of which is sufficient to have caused its rejection. First, it was misleading, since it was calculated to lead the jury to believe that there could be *no recovery* in respect to the wrong alleged in this count, if the damages might have been avoided by the exercise of ordinary care on the plaintiff's part; secondly, it fails to define the duty imposed by law upon the plaintiff and the consequences to him which result from the breach of that duty.

Assuming that the tort had been committed, the plaintiff was under an obligation to do what he could by reasonable exertion and expense to save himself from the consequences of the wrong, and all damages which resulted from a failure

to discharge that duty must be borne by him, subject, however, to this limitation, that such damages cannot be used to *defeat* the right of the plaintiff to maintain his action and recover against the wrongdoer. The doctrine upon this subject is fully stated in 13 *Cyc.* 71; *Lange* v. *Wagner,* 52 Md. 311; *Fustenburg* v. *Fawsett,* 61 Md. 192; *Baltimore and Sparrows Point Railroad Company* v. *Hackett,* 87 Md. 224.

The plaintiff's first, second, third and fourth prayers are based upon the first, third and fourth counts of the declaration, and merely conclude to the plaintiff's *right* to recover, if the jury found that the acts recited therein (of which we have said there was evidence) seriously interfered with the comfortable enjoyment of the plaintiff's property or caused great bodily discomfort. As we have held there was no element of estoppel in the case, these prayers accurately expressed the law applicable to it, and were properly granted. What we have said disposes of the defendant's special exceptions and motions to strike out testimony.

The plaintiff's eighth prayer, which was upon the measure of damages, constitutes manifest reversible error. In the case of the *Belt Railroad* v. *Sattler,* 102 Md. 601, we said: "That the question as to whether damages were suffered by the plaintiff as a direct consequence of the acts complained of and the extent of those damages were questions for the jury, under proper direction by the Court. This Court in the case of the *Baltimore and Ohio Railroad Company* v. *Carr,* 71 Md. 133, held that the rule by which damages are to be estimated is, as a general principle, a question of law, to be decided by the Court—that is to say, the Court must decide and instruct the jury in respect to what elements *and within what limits,* damages may be estimated in the particular action. *Harker et al.* v. *Dement,* 9 Gill, 7; *Hadley* v. *Baxendale,* 9 Exch. 341-354. Indeed, it is of the utmost importance that juries should be explicitly instructed as to the rules by which they are to be governed in estimating damages; for, as was justly observed by the Court in *Hadley* v. *Baxendale, supra:* "If the jury are left without a definite rule

to guide them, it would in most cases lead to the greatest injustice." This subject has been recently considered by us in the case of the *Western Maryland Railroad Company* v. *Martin,* 110 Md. 554, decided June 1st of the present year.

This suit was brought in April, 1907, and was tried in February, 1909. Being an action for a temporary nuisance, the damages recoverable ought to have been confined to such as may have accrued down to the institution of the suit, subject to such abatement under the rules stated as the jury may have found the plaintiff might have avoided by reasonable effort and expense. 21 *Am. & Eng. Ency. of Law,* 730; *Sutherland on Damages,* 3rd Ed., sec. 1038; *Repp* v. *Berger,* 60 Md. 1.

The plaintiff's eighth prayer not only ignores the question of the plaintiff's duty to have minimized the damages resulting from the overflow of the contents of the slop tank upon his premises, but it failed to confine the recovery to such damages, if any, as the plaintiff may have suffered to the time of bringing the suit.

For error in granting this prayer the judgment must be reversed, and a new trial awarded.

> *Judgment reversed, with costs, and new trial awarded.*